OPINION
{¶ 1} Defendant-Appellant, Dolgencorp, Inc., d.b.a. Dollar General Corporation (hereinafter referred to as "Dollar General"), appeals the judgments of *Page 3 
the Defiance County Court of Common Pleas, granting Plaintiff-Appellee, Kristina M. Coffey, the right to receive workers' compensation benefits and denying its motions for judgment notwithstanding the verdict and for a new trial. In this consolidated appeal, Dollar General asserts that the trial court allowed testimony about aggravation of degenerative disc disease (hereinafter referred to as "the aggravation condition") in violation of Ward v. KrogerCompany, 106 Ohio St.3d 35, 2005-Ohio-3560; that the trial court violated jeopardy standards and inappropriately altered the orderly process in the case; that the evidence presented by Coffey's expert mandated a directed verdict and was not in conformity with the trial court's jury instructions; and, that the trial court erred in denying its motions for a judgment notwithstanding the verdict and for a new trial. Based on the following, we affirm.
 {¶ 2} In July 2004, Coffey filed a claim with Appellee, Bureau of Workers' Compensation, alleging she sustained injuries to her back in June 2004, when she tripped and fell while unloading a truck for her employer, Dollar General.[1]
 {¶ 3} In September 2004, a district hearing officer of the Industrial Commission (hereinafter referred to as "the Commission") denied Coffey's claim, which she appealed. *Page 4 
 {¶ 4} In November 2004, a staff hearing officer of the Commission modified the September 2004 order, accounting for a MRI conducted after Coffey's initial filing of her claim. The staff hearing officer acknowledged the "positive MRI findings," but again denied Coffey's claim, from which she appealed. (Coffey Complt., Ex.B, p. 1).
 {¶ 5} In December 2004, the Commission refused to hear Coffey's appeal pursuant to R.C. 4123.511(E).
 {¶ 6} In January 2005, Coffey appealed the Commission's decision to the Defiance County Court of Common Pleas pursuant to R.C. 4123.512.
 {¶ 7} In May 2006, the case proceeded to trial, during which Dollar General filed a motion in limine to exclude testimony regarding the aggravation condition based on Ward, which the trial court denied. In doing so, the trial court explained:
 The Court has reviewed the complaint in this matter on the appeal. No specific condition is referenced. It merely refers to injury. Review of the staff hearing officer and district [hearing] officer's decision also do not specifically discuss, uh, the, a discreet (sic) condition. They rather refer to injury generically. In Ward, I would note there were specific conditions addressed both in the decisions of the hearing officers and in the complaint and actually the Ward decision hinged upon the trial court's allowance of the motion for leave to amend the complaint to assert additional conditions.
 In this case, there is nothing previously filed with the Court including the complaint and the decision of the hearing officers that limits consideration to a specific condition. They simply dealt with the concept of injury and by virtue of the statutory *Page 5 definition of injury, that could include an aggravation of a preexisting condition.
 The veracity of a claim of aggravation is certainly something that you can discuss on cross examination with whom ever may raise the topic if, in fact, there are prior statements or prior reports or prior testimony that never addressed that but that concept of injury including an aggravation is certainly something that the agency could have addressed and I don't have any documentation that they did not consider that in terms of either the complaint or either of the staff hearing officer or district hearing officer reports so for that reason the motion in limine will be overruled.
(Trial Tr., Vol. I, pp. 125-26).
 {¶ 8} Thereafter, Dr. Jane Nowotny, Coffey's treating chiropractor and expert, testified and concluded that, as a result of the June 2004 incident, Coffey sustained an injury to her sciatic nerve, an L4-5 disc protrusion, "an injury to her L4-5 disc causing a protrusion impinging upon the neuron foramina," and a lumbar strain. (Trial Tr., Vol. I, pp. 158-60).
 {¶ 9} Specifically, Dr. Nowotny testified that, regarding sciatica, the L5 lumbar vertebra correlates to the sciatic nerve; that a problem with the L5 lumbar vertebra can pinch the sciatic nerve, which can cause pain down an individual's legs or numbness in an individual's toes; that Coffey first presented with pain in her left buttock indicative of the beginning stages of sciatica; that the results of objective tests performed on Coffey indicated "sciatic compression" and "positive, sciatic irritation"; and, that Coffey also experienced pain radiating down her legs, which was indicative of sciatica. (Trial Tr., Vol. I, p. 150). *Page 6 
 {¶ 10} Regarding the L5-S1 and L4-5 disc protrusions, Dr. Nowotny testified that objective tests indicated that Coffey had differentiation between the S1 and L5 vertebrae; that Coffey's symptoms of sciatica indicated something more serious, such as a disc protrusion, may have occurred; that a MRI is needed to determine whether someone has a disc protrusion; that the MRI results indicated Coffey had a disc protrusion at the L4-5 level; and, that Coffey's MRI results revealed that Coffey had degenerative disc changes and a disc protrusion at the L5-S1 level and that "the left lateral disc bulge abuts the intraforaminal nerve root and moderately narrows the left foramen."[2] (Trial Tr., Vol. I, p. 155).
 {¶ 11} Dr. Nowotny further testified that people who do not experience traumatic injuries still develop degenerative problems in their spine due to the normal wear and tear of the aging process; that such degeneration typically occurs first in the L5 disc, located on top of the tailbone, in a person's thirties or forties;[3] that she would not be surprised to see a forty-year old patient have a degenerative condition in the L5-S1 disc; that a traumatic event such as a fall or an abrupt, blunt trauma could irritate a degenerative condition; and, that Coffey had degenerative disc disease at L5-S1. *Page 7 
 {¶ 12} Dr. Nowotny also concluded that Coffey's fall and twisting of her back in June 2004 aggravated her degenerative condition and made it symptomatic.[4]
 {¶ 13} On cross-examination, Dr. Nowotny admitted that she did not mention the aggravation condition in her treatment notes; that protrusions can result from degenerative changes; that degenerative changes are primarily caused by natural deterioration; that there is no way to determine the age of degenerative changes; and, that it is possible for an individual to have a disc bulge, disc protrusion, or degenerative changes without exhibiting symptoms. Also, Dr. Nowotny testified that the June 2004 accident directly and proximately caused Coffey's disc protrusions and bulges.
 {¶ 14} On redirect examination, Dr. Nowotny clarified that, while it is possible for an individual to have a disc bulge or protrusion without being symptomatic, an individual with results like those seen in Coffey's MRI would be symptomatic and unable to walk around without problems.
 {¶ 15} At the close of the trial, Dollar General moved for a directed verdict regarding the aggravation condition and the L4-5 disc protrusion, alleging that they were not raised administratively. Alternatively, Dollar General moved for a *Page 8 
directed verdict regarding the L4-5 and L5-S1 disc protrusions, alleging they resulted from natural deterioration.[5] The trial court ruled as follows:
 As we discussed the other day, the record in this matter is problematic because of the lack of findings by the, or the lack of specificity by the staff and district hearing officers in denying the claim. They didn't deny it as to, for example, as disc protrusion at L5-S1 or, uh, didn't deny it as to sciatica. They just simply said denied so that is problematic. Uh, the Court based on Ward versus Kroger will, uh, not instruct the jury as to aggravation of a preexisting condition and will not give the jury the opportunity to return a verdict on that condition. It's the Court intention, however, to instruct the jury on the, on four separate conditions, being sciatica, L4-5 disc protrusion, L5-S1 disc [protrusion], lumbosacral strain, and those will go to the jury. The aggravation [condition] will not. Uh, the jury will be given separate interrogatories addressing primary, primarily due to natural deterioration or degeneration as to those conditions susceptible of that cause. In the Court's opinion those would include the sciatica, the protrusion at L4-5 and L5-S1. Obviously, natural deterioration would, could not logically be the cause of lumbosacral strain so the interrogatories will address primarily due to natural deterioration as to the other three conditions and not the lumbosacral strain and then they'll also have, uh, depending upon those findings, the opportunity to make the decision regarding proximate causation of each of the four conditions as it relates to the incident of June 13th of 2004.
(Trial Tr., Vol. II, pp. 268-70). *Page 9 
 {¶ 16} Subsequently, the trial court instructed the jury that, before determining whether Coffey was entitled to receive benefits, it had to first determine whether her specific injuries were caused primarily by the natural deterioration of her spine and that, if her injuries were caused by natural deterioration of her spine, a verdict must be returned in favor of Dollar General.
The trial court then instructed the jury:
 If you do not find that the specific back injuries claimed by [Coffey] were caused primarily by the natural deterioration of her spine, you will, as to each condition, determine whether [Coffey] has proven by a preponderance of the evidence that she sustained the specific injury as a direct and proximate result of the work incident of [June] 13, 2004.
(Trial Tr., Vol. II, pp. 304).
 {¶ 17} Thereafter, the jury returned a verdict granting Coffey the right to receive benefits for the conditions of sciatica, lumbosacral strain, L4-5 disc protrusion, and L5-S1 disc protrusion. Thereafter, the trial court issued its judgment entry, journalizing the jury's verdict and providing that "the condition of aggravation of degenerative disc disease was not addressed at the administrative level and that according to Ward v. Kroger Co. (2005), 106 Ohio St.3d 35, this court has no jurisdiction to hear this condition." (May 2006 Judgment Entry, p. 1).
 {¶ 18} In June 2006, Dollar General moved for judgment notwithstanding the verdict and for a new trial. Additionally, Dollar General appealed the trial *Page 10 
court's judgment granting Coffey the right to receive workers' compensation benefits.
 {¶ 19} In July 2006, the trial court held a hearing on Dollar General's motions for judgment notwithstanding the verdict and for a new trial and denied both motions.[6]
 {¶ 20} In September 2006, Dollar General appealed the trial court's denial of its motions for judgment notwithstanding the verdict and for a new trial.
 {¶ 21} Dollar General's consolidated appeal is now before us, in which Dollar General presents the following assignments of error for our review.[7]
 Assignment of Error No. I THE TRIAL COURT'S DECISION TO ALLOW TESTIMONY ON AGGRAVATION OF PRE-EXISTING DEGENERATIVE DISC DISEASE AT L5-S1 VIOLATES WARD VS. KROGER COMPANY (2005), 106 OHIO ST.3D 35.
 Assignment of Error No. II THE TRIAL COURT VIOLATED THE STANDARDS OF JEOPARDY AND INAPPROPRIATELY ALTERED THE ORDERLY PROCESS IN THE CASE BY STATING ON THE RECORD THAT IT WOULD GRANT A DIRECTED VERDICT FOR APPELLANT ON THE AGGRAVATION OF PRE-EXISTING DEGENERATIVE DISC DISEASE BUT *Page 11 THEREAFTER ISSUING ITS ENTRY OF MAY 25, 2006 THAT FAILED TO ADOPT ITS BENCH RULING.
 Assignment of Error No. III THE EVIDENCE PRESENTED BY DR. NOWOTNY MANDATED A DIRECTED VERDICT AND WAS NOT IN CONFORMANCE WITH THE TRIAL COURT'S ULTIMATE CHARGES TO THE JURY.
 Assignment of Error No. IV THE DECISION OF THE TRIAL COURT TO DENY APPELLANT'S POST TRIAL MOTIONS FOR NEW TRIAL AND/OR JUDGMENT NOTWITHSTANDING THE VERDICT WAS ERROR.
 {¶ 22} Due to the nature of Dollar General's assignments of error, we elect to address its second and fourth assignments of error together. Additionally, the following standard of review applies throughout.
 Standard of Review {¶ 23} An appeal from the Industrial Commission to a trial court under R.C. 4123.512 regarding a claimant's right to participate in the workers' compensation scheme is a de novo determination of matters of law and fact. Oswald v. Connor (1985), 16 Ohio St.3d 38, 42, citingSwanton v. Stringer (1975), 42 Ohio St.2d 356, 359; Wyatt v. Autozone,Inc., 3d Dist. No. 15-03-05, 2003-Ohio-6706, ¶ 7. As such, the Civil Rules apply and the trial court must disregard the Industrial Commission's decision and rationale. Snyder v. Ford Motor Co., 3d Dist. No. 1-05-41, 2005-Ohio-6415, ¶ 30; Wyatt, 2003-Ohio-6706 at ¶ 7. *Page 12 
 {¶ 24} Upon further appeal, review of the trial court's decision is limited, and "`[i]f the evidence before that [trial] court is sufficient to support the result reached, [the reviewing] court will not substitute its judgment.'" Oswald, 16 Ohio St.3d at 42, quoting Swanton,42 Ohio St.2d at 359; Iiams v. Corporate Support, Inc. (1994),98 Ohio App.3d 477, 480-81.
 Assignment of Error No. I {¶ 25} In its first assignment of error, Dollar General contends that the trial court's allowance of testimony on the aggravation condition violated Ward[8] Specifically, Dollar General asserts that the trial court should not have allowed Dr. Nowotny to testify regarding the aggravation condition because it was not raised administratively.
 {¶ 26} Decisions regarding the admissibility of evidence, including motions in limine and expert testimony, are within the sound discretion of the trial court and will not be reversed absent a showing of an abuse of discretion. State v. Yohey (1996), 3d Dist. No. 9-95-46,1996 WL 116144, referencing State v. Graham (1979), 58 Ohio St.2d 350 andState v. Lundy (1987), 41 Ohio App.3d 163; Colboch v. Uniroyal Tire Co.,Inc. (1996), 108 Ohio App.3d 448, 461. An abuse of discretion "connotes more than an error of law or judgment; it implies that the *Page 13 
court's attitude is unreasonable, arbitrary, or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. However, "even where a trial court abuses its discretion in the admission of evidence," a reviewing court will not reverse unless the error affected a substantial right of the party at issue. State v. Lundgren (1995),73 Ohio St.3d 474, 486; Evid. R. 103(A); Civ. R. 61.
 {¶ 27} In the case sub judice, Dollar General relies on Ward to support its argument that the trial court erred in denying its motion in limine and allowing Dr. Nowotny to testify regarding the aggravation condition.
 {¶ 28} Ward involved an employee's appeal from the Industrial Commission's denial of his claims for the conditions of "medial meniscus tear" and "chondromalacia" in his right knee. 106 Ohio St.3d at 35. On appeal to the trial court, the employee amended his complaint, inserting two new conditions that had not been presented at the administrative level, in addition to the two claims originally denied.[9] Id. at 36. The jury returned a verdict against the employee for the originally appealed condition, but found that he was entitled to participate for the two additional conditions. The court of appeals reversed and the Supreme Court affirmed the reversal, holding that "the claimant in an R.C. 4123.512 appeal may seek to participate in the Workers' Compensation Fund only for those *Page 14 
conditions that were addressed in the administrative order from which the appeal is taken." Id. at 39.
 {¶ 29} Here, Dollar General asserts that, like the employee inWard, Coffey never presented a claim for the aggravation condition at the administrative level and, therefore, Dr. Nowotny's testimony on that issue should have been excluded. In denying Dollar General's motion in limine, the trial court emphasized its difficulty in determining what conditions were considered administratively because both the Commission's findings and Coffey's complaint were general rather than specific. Consequently, the trial court decided to allow Dr. Nowotny to testify about the aggravation condition. However, by the end of the trial, the trial court was able to determine that the aggravation condition had not, in fact, been raised before the Commission, and did not submit the issue to the jury. Given the difficulties in determining which specific conditions Coffey raised administratively, we cannot find that the trial court abused its discretion in allowing Dr. Nowotny to testify regarding the aggravation condition. Indeed, it appears from the record that the only way the trial court could have determined whether the aggravation condition was raised administratively was to allow testimony on it.[10] *Page 15 
 {¶ 30} However, even were we to find that the trial court abused its discretion in allowing Dr. Nowotny to testify regarding the aggravation condition, we cannot reverse unless the trial court's error affected a substantial right of Dollar General or prejudiced it in some way.Lundgren, 73 Ohio St.3d at 486; Evid. R. 103(A); Civ. R. 61. Dollar General argues that, despite the fact that the jury never rendered a verdict on the aggravation condition, admittance of evidence on that issue could have influenced or tainted the jury's verdict on the remaining conditions in some way. However, Dollar General's argument is speculative at best, as it points to nothing in the record or jury verdict to support its argument. Indeed, the jury was precluded from rendering a verdict on the aggravation issue and the trial court's instructions pertained specifically to the other four conditions presented to the jury. Thus, even if the trial court erred by allowing Dr. Nowotny to testify regarding the aggravation condition, it was harmless.
 {¶ 31} Accordingly, we overrule Dollar General's first assignment of error.
 Assignments of Error Nos. II IV {¶ 32} In its second assignment of error, Dollar General contends that the trial court violated the standards of jeopardy and inappropriately altered the orderly process in the case by stating on the record that it would grant a directed verdict on the aggravation condition, but thereafter issuing an entry that failed to adopt its bench ruling. In its fourth assignment of error, Dollar General contends *Page 16 
that the trial court erred by denying its motions for judgment notwithstanding the verdict and for a new trial. Specifically, Dollar General asserts that, once the trial court allowed Dr. Nowotny to testify regarding the aggravation condition, the issue had to be adjudicated on its merits; that, by precluding the jury from ruling on the aggravation condition in response to Dollar General's motion for a directed verdict, the trial court granted the directed verdict; and, that in its subsequent judgment entry explaining that it lacked jurisdiction over the aggravation condition, the trial court acted inconsistently and gave Coffey a "second bite at the apple." We disagree.
 {¶ 33} At the outset, we note that a directed verdict is appropriate when the opposing party has failed to adduce any evidence on the essential elements of the claim. Cooper v. Grace Baptist Church (1992),81 Ohio App.3d 728, 734. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury and constitutes a question of law. Burns v. PrudentialSecurities, Inc., 167 Ohio App.3d 809, 823, 2006-Ohio-3550, citingHargrove v. Tanner (1990), 66 Ohio App.3d 693, 695. Additionally, the test applied to a ruling on a motion for judgment notwithstanding the verdict is the same as that for a motion for a directed verdict.Burns, 167 Ohio App.3d at 823, citing Posin v. A.B.C. Motor CourtHotel (1976), 45 Ohio St.2d 271, 275. *Page 17 
 {¶ 34} Here, Dollar General argues that the trial court granted its motion for a directed verdict on the merits of the aggravation condition at the trial, but subsequently altered its ruling in its judgment entry. However, a close inspection of the record indicates that, while Dollar General designated its motion as one for a directed verdict, the substance of Dollar General's argument in support of its motion was jurisdictional in nature, not evidentiary. Also, Dollar General made no assertion, either at the trial or the hearing on its post-trial motions, that the evidence was insufficient to warrant Coffey's receipt of benefits for the aggravation condition or that Coffey failed to prove the requisite elements for the aggravation condition. Instead, in both instances Dollar General argued that the aggravation condition had not been raised administratively pursuant to Ward, which dealt with a trial court's jurisdiction over claims not first raised administratively.
 {¶ 35} Contrary to Dollar General's assertion, the trial court never stated that it was granting a directed verdict or that the evidence was insufficient to support the aggravation condition. Instead, the trial court stated that the jury would not be allowed to render a verdict on the aggravation condition based on Ward. Additionally, in its subsequent journal entry, the trial court explained that it did not have jurisdiction over the aggravation condition pursuant to Ward, and it reiterated this explanation at the hearing on Dollar General's post-trial motions. *Page 18 
Thus, the trial court's holding was consistent throughout. Nonetheless, Dollar General urges us to ignore the content of its motions for a directed verdict, judgment notwithstanding the verdict, and new trial by focusing solely on their label, rather than on their substance. We decline to do so.
 {¶ 36} Furthermore, Dollar General's assertions that, once the trial court allowed Dr. Nowotny to testify about the aggravation condition the issue had to be adjudicated on its merits, and that precluding the jury from reaching the aggravation condition unfairly allows Coffey a "second bite of the apple", lack merit.[11] Presumably, Dollar General's use of the phrase "second bite of the apple" refers to the principles of res judicata or collateral estoppel. The doctrines of res judicata and collateral estoppel "preclude relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction." Vectren EnergyDelivery of Ohio, Inc. v. Pub. Util. Comm., 113 Ohio St.3d 180, 186,2006-Ohio-1386. However, neither of these doctrines applies to the instant case because the trial court did not have jurisdiction over the aggravation condition and the jury did not render a verdict on it. Notably, in Ward, not only did the jury hear evidence of conditions that had not been first raised administratively, but it also rendered verdicts on those conditions. *Page 19 
Nevertheless, the Ohio Supreme Court upheld the appellate court's reversal of the verdicts on jurisdictional grounds and noted that nothing prevented the employee from "going back to the administrative agencies and requesting" allowance of those conditions. Ward,106 Ohio St.3d at 39. Similarly, the trial court's allowance of Dr. Nowotny's testimony regarding the aggravation condition did not alter the fact that the trial court lacked jurisdiction over that condition and any adjudication of the merits of it, by directed verdict or otherwise, would have constituted error. Thus, we find that the trial court's decision to preclude the jury from rendering a verdict on the aggravation condition did not constitute a granting of Dollar General's motion for a directed verdict and was supported by sufficient evidence in the record. Likewise, we find that the trial court did not err in denying Dollar General's motions for judgment notwithstanding the verdict and for a new trial.
 {¶ 37} Accordingly, we overrule Dollar General's second and fourth assignments of error.
 Assignment of Error No. III {¶ 38} In its third assignment of error, Dollar General contends that Dr. Nowotny's testimony mandated a directed verdict and did not conform with the trial court's instructions to the jury. Specifically, Dollar General contends that the *Page 20 
trial court erred by failing to grant its motion for a directed verdict regarding the L4-5 and L5-S1 disc protrusions.[12] We disagree.
 {¶ 39} A trial court may grant a motion for a directed verdict if, after construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds "could come to only one conclusion and that conclusion is adverse to the party opposing the motion." Burns, 167 Ohio App.3d at 823, citing Crawford v.Halkovics (1982), 1 Ohio St.3d 184, 185-86; Civ. R. 50(A)(4). A directed verdict is appropriate when the opposing party has failed to adduce any evidence on the essential elements of the claim. Cooper v. Grace BaptistChurch (1992), 81 Ohio App.3d 728, 734. The issue to be determined involves a test of the legal sufficiency of the evidence to allow the case to proceed to the jury and constitutes a question of law.Burns, 167 Ohio App.3d at 823, citing Hargrove v. Tanner (1990),66 Ohio App.3d 693, 695. A reviewing court evaluates a trial court's ruling on a motion for directed verdict de novo. Burns, 167 Ohio App.3d at 823, citing McConnell v. Hunt Sports Ents. (1999), 132 Ohio App.3d 657,686-87.
 {¶ 40} "In order to establish a right to workmen's compensation for harm or disability claimed to have resulted from an accidental injury, it is necessary for the *Page 21 
claimant to show by a preponderance of the evidence, medical or otherwise, not only that his injury arose out of and in the course of his employment, but that a direct and proximate causal relationship existed between his injury and his harm or disability." Cook v.Mayfield (1989), 45 Ohio St.3d 200, 204, quoting Fox v. Indus.Comm. (1955), 162 Ohio St. 569, paragraph one of the syllabus.
 {¶ 41} Here, Dollar General basically asserts that Dr. Nowotny failed to establish a causal connection between Coffey's June 2004 incident and the conditions of sciatica and the L4-5 and L5-S1 disc protrusions, and that, consequently, the trial court should have granted Dollar General's motion for a directed verdict on those conditions. However, a review of the record indicates that Dr. Nowotny did testify about both sciatica and the L5-S1 disc protrusion during direct examination by explaining both conditions and stating that the June 2004 incident caused Coffey's sciatica, lumbar strain, and L4-5 disc protrusion. Additionally, in the context of adducing Dr. Nowotny's expert opinion on each specific condition, Coffey's counsel asked whether Coffey had sustained "an injury to her L4-5 disc causing a protrusion impinging upon the neuron foramina," immediately after he had already asked whether she had sustained a L4-5 disc protrusion as a result of the June 2004 incident. Presumably, Coffey's counsel meant to refer to the L5-S1 disc, because similar phrasing was used on the MRI
Nevertheless, we address Dollar General's argument regarding sciatica since Dollar General seems to lump the conditions of sciatica and L5-S1 disc protrusion together, even though they are two separate conditions. *Page 22 
results in reference to the L5-S1 disc and in Dr. Nowotny's discussion of the L5-S1 injury prior to that line of questioning. Regardless, Dr. Nowotny clearly testified on cross-examination that the June 2004 incident caused the L5-S1 disc protrusion. (Trial Tr., Vol. I, pp. 193, 195).
 {¶ 42} Moreover, while Dollar General correctly asserts that Dr. Nowotny admitted on cross-examination that, in general, disc protrusions can result from degenerative change and natural deterioration of the spine, she also testified that Coffey's disc protrusions resulted from the June 2004 incident. Such testimony only demonstrates that reasonable minds could come to differing conclusions as to whether Coffey's injuries resulted from natural deterioration or from her fall, and that, consequently, the trial court properly allowed this issue to go to the jury. The trial court submitted separate interrogatories to the jury regarding natural deterioration of the spine on each relevant condition and instructed the jury accordingly, to which Dollar General did not object. Thus, we find that the trial court did not err in failing to grant Dollar General's motion for a directed verdict on the conditions of sciatica, L4-5 disc protrusion, and L5-S1 disc protrusion.
 {¶ 43} Accordingly, we overrule Dollar General's third assignment of error. *Page 23 
 {¶ 44} Having found no error prejudicial to the appellant herein, in the particulars assigned and argued, we affirm the judgments of the trial court.
Judgments Affirmed.
 PRESTON and WILLAMOWSKI, JJ., concur.
[1] Dollar General is a self-insured employer under the Workers' Compensation scheme. As such, the Bureau did not participate in any of the litigation between Coffey and Dollar General, including this appeal.
[2] Dr. Nowotny explained that this meant the L5-S1 protrusion added pressure to the sciatic nerve root.
[3] At the time of the trial, Coffey was thirty-six years of age.
[4] Dollar General did not renew its objection to this evidence during the trial as typically required, see State v. Grubb (1986),28 Ohio St.3d 199, 203, because, per the trial court's request, the parties stipulated that any error was preserved when the trial court issued its ruling on Dollar General's motion in limine, so as not to disrupt the flow of testimony for the jury. (Trial Tr., Vol. I, pp. 127-28).
[5] In support of its argument, both at the trial and the hearing on its motions for judgment notwithstanding the verdict and for a new trial, Dollar General referenced the testimony of its expert, Dr. Reithmiller. We note that, at the trial, Dollar General submitted Dr. Reithmiller's testimony by videotape, but that neither the videotape nor a transcription of it was included with the record on appeal as required under App. R. 9(B), App. R. 10(A), and Loc. R. 5(A). Accordingly, under App. R. 12(A)(1)(b), we are limited to determining the appeal on the record as provided in App. R. 9. See also Motorist Mut. Ins. Co. v.Hohman, 3d Dist. No. 17-06-08, 2007-Ohio-108, ¶ 27; Hull v.Stevens, 9th Dist. No. 22842, 2006-Ohio-923, ¶ 11.
[6] At the hearing, Dollar General asserted the same arguments presented in its first, second, and fourth assignments of error. Additionally, Dollar General admitted that the conditions of lumbar strain, disc bulges, and sciatica were raised administratively. (Hearing Tr., p. 4).
[7] In case number 4-06-36, Dollar General appealed the trial court's denial of its motions for judgment notwithstanding the verdict and for a new trial. In case number 4-06-25, Dollar General appealed the trial court's grant of Coffey's right to receive workers' compensation benefits. We granted Dollar General's request to consolidate the appeals, consolidating the appeals under case number 4-06-25. (October 2006 Journal Entry).
[8] We note that, during the trial, Dollar General also moved for a directed verdict regarding the L4-5 disc protrusion based onWard and asserted in its appellate brief that, in addition to the aggravation condition, the L4-5 disc protrusion and sciatica conditions were never raised administratively. However, Dollar General admitted at both the July 2006 hearing on its post-trial motions and during oral arguments on appeal to this Court that the conditions of sciatica, lumbosacral strain, L4-5 disc protrusion, and L5-S1 disc protrusion were raised administratively. Accordingly, we will address only the aggravation condition.
[9] Thereafter, the employee dismissed the claim for chondromalacia.
[10] Dr. Nowotny testified that she did not reference the aggravation condition in her treatment notes, which presumably aided the trial court in its determination that the aggravation condition had not been raised administratively.
[11] We note that Dollar General alleges that the trial court violated "standards of jeopardy." Presumably, Dollar General is referring to res judicata or collateral estoppel principles, rather than notions of double jeopardy, since the concept of double jeopardy applies only to criminal proceedings and civil penalties that constitute criminal punishment. See, e.g. Hudson v. U.S. (1997), 522 U.S. 93; State v.Martello, 97 Ohio St.3d 398, 2002-Ohio-6661.
[12] We note that Dollar General also asserts that a directed verdict should have been granted regarding the condition of sciatica. However, a review of the record indicates that Dollar General failed to include the sciatica condition in its motion for a directed verdict on natural deterioration grounds during the trial. *Page 1